IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17–cv–00495–LTB–KMT

GORDON NITKA, an individual,

    Plaintiff,

v.

NELNET, INC., a Nebraska corporation,

    Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendant Nelnet, Inc.'s "Motion to Dismiss" (Doc. No. 9 [Mot.], filed May 19, 2017). Plaintiff filed his response on June 22, 2017 (Doc. No. 12 [Resp.]), and Defendant filed its reply on July 6, 2017 (Doc. No. 15 [Reply]).

## STATEMENT OF THE CASE

    Plaintiff, proceeding *pro se*, asserts claims for violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), breach of contract, intentional infliction of emotional distress, and fraud and misrepresentation.[1] (*See* Doc. No. 1 [Compl.].) Plaintiff states he applied for and received Federal Direct Stafford/Ford Loans ("Sub/Unsub Loans") and Federal Direct PLUS Loans ("PLUS Loans") over a period of time from January 1, 2011, through January 18, 2013. (*See id.*, ¶¶ 38.) Sometime in January and December 2011,

---

[1] Defendant does not move to dismiss Plaintiff's intentional infliction of emotional distress or fraud and misrepresentation claims. (*See* Mot. at 2 n.2.)

Defendant Nelnet, Inc., contacted Plaintiff to inform him that it had been selected to be the servicer of his Sub/Unsub and PLUS Loans. (*Id.*, ¶¶ 51, 61.) Plaintiff states repayment of the PLUS Loans was to begin December 1, 2013, and repayment of the Sub/Unsub Loans was to begin January 1, 2014. (*Id.*, ¶¶ 55. 64.) Plaintiff alleges Defendant's records showed his PLUS Loans were overdue by ninety days as of March 17, 2014 and by 120 days as of April 21, 2014; and his Sub/Unsub Loans were overdue by ninety days as of April 21, 2014. (*Id.*, ¶¶ 56, 66, 69.) Defendant reported the delinquencies to the credit reporting agencies. (*Id.*, ¶¶ 57, 67.)

Plaintiff states in May 2014, he contacted Defendant to discuss "possible improvements to or the complete rehabilitation of his account." (*Id.*, ¶ 75.) Plaintiff alleges he was offered and accepted an unemployment deferment, which temporarily excused him from his payment obligations on his loans. (*Id.*, ¶¶ 76–77.) Plaintiff alleges the Defendant "offered to offset the account balance – bringing it to zero ($0) – and to back-date the deferment such that it would begin on January 1, 2014." (*Id.*, ¶ 79.) Plaintiff's states his deferment was "back-dated to January 1, 2014 and concluded on November 13, 2014." (*Id.*, ¶ 82.)

Plaintiff alleges that, despite the deferment, Defendant's records continue to show that Plaintiff missed payments between January 1, 2014, and November 13, 2014. (*Id.*, ¶ 84.) Because of this, Plaintiff alleges he has ten instances of damaging credit information concerning the Sub/Unsub Loans and eight instances of damaging credit information concerning the PLUS Loans. (*Id.*, ¶¶ 86–87.) Plaintiff states on November 10, 2016, he emailed and faxed a letter to Defendant to alert it to the credit reporting errors. (*Id.*, ¶ 88.) Plaintiff alleges Defendant refuses to conduct an investigation, to correct its records, and to provide accurate information to the credit reporting agencies. (*Id.*, ¶¶ 90–91.)

**STANDARDS OF REVIEW**

A.  **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

B.  ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

A.  *Count I, FRCA Claim*

Defendant argues Plaintiff's Count I should be dismissed because (1) there is no private right of action against furnishers to enforce the obligations under 15 U.S.C. § 1681s–2(a) to provide accurate information to credit reporting agencies; and (2) Plaintiff alleges he contacted Defendant directly regarding the dispute. (Mot. at 4–6.)

1.  *Section 1681s–2(a)*

Plaintiff alleges that Defendant, as a "furnisher of information to consumer reporting agencies[,]" "violated 15 U.S.C.S. § 1681 when it furnished information relating to a consumer to the consumer reporting agencies that it knew was inaccurate or had reasonable cause to believe was inaccurate." (Compl., ¶¶ 14, 94.)

The Tenth Circuit has held that

> [t]he FCRA imposes a duty on persons who provide information to credit reporting agencies ("furnishers") to accurately report information. 15 U.S.C. § 1681s–2(a). While it also gives consumers a private right of action against those who violate its provisions, *see* 15 U.S.C. § 1681n (right of action against willful violators); 15 U.S.C. § 1681o (right of action against negligent violators), **that right of action is limited to claims against the credit reporting agency; it does not extend to furnishers**. 15 U.S.C. § 1681s–2(c); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002); *see Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (unpublished).

5

*Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012) (emphasis added).

Because Defendant is not a credit reporting agency, Plaintiff does not have a private right of action under § 1681s–2(a). Accordingly, Plaintiff's § 1681s–2(a) should be dismissed with prejudice.

*2. Section 1681s–2(b)*

Section 1681s–2(b) imposes a duty on furnishers after receiving notice of a consumer dispute from a credit reporting agency to investigate and report incomplete and inaccurate information to them. *See DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296, 1299 (D.N.M. 2000). *See Sanders*, 689 F.3d at 1147 (private action limitation applies only to violations of the duties listed in § 1681s–2(a).). However, "[t]he duties listed in § 1681s–2(b) 'arise only after the furnisher receives notice of a dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009). The consumer cannot recover under § 1681s–2(b) if they do not initiate the process for recovery by notifying a credit reporting agency of the dispute. *See Sanders*, 689 F.3d at 1147.

"Where a plaintiff has not alleged that CRAs were notified of disputed credit information, the Tenth Circuit has found that the plaintiff did not sufficiently allege that the furnishers of the disputed information had a duty under 15 U.S.C. § 1681s–2(b)." *Fishback v. HSBC Retail Servs. Inc.*, 944 F. Supp. 2d 1098, 1108 (D.N.M. 2013) (citing *Sanders*, 689 F.3d at 1147 [holding that a district court properly dismissed a plaintiff's FCRA claim because the plaintiff did not allege notification of the dispute to a credit reporting agency]; *Pinson*, 316 F. App'x at 751 [holding

6

that plaintiffs failed to state a claim for relief under the FCRA because they alleged only that they notified a furnisher—not a CRA—of a dispute]).

Plaintiff's Complaint is devoid of any allegation that he contacted a credit reporting agency to dispute his credit information. Rather, Plaintiff alleges only that

> 88. On November 10, 2016, Plaintiff e/mailed and faxed a letter to NELNET and its general counsel alerting them to the errors in NELNET's records and requested they be properly corrected.
>
> 89. In spite of Plaintiff's repeated attempts to communicate with NELNET, Defendant Corporation refused, and continues to refuse, to conduct a satisfactory investigation.
>
> 90. In spite of Plaintiff's repeated attempts to communicate with NELNET, Defendant Corporation refused, and continues to refuse, to correct Plaintiff's records within its system.
>
> 91. In spite of Plaintiff's repeated attempts to communicate with NELNET, Defendant Corporation refused, and continues to refuse, to furnish complete and accurate information to the credit reporting agencies.
>
> 132. NELNET was alerted to the inaccuracies in its records and, yet, still provided inaccurate information to the credit reporting agencies. Therefore, their actions were intentional.

(Compl., ¶¶ 88–91, 132.)

For the first time in his response, Plaintiff states that he "did initiate the FCRA's dispute process on multiple occasions" by sending letters to CRAs concerning the disputed information. (Resp. at 5–6.) Plaintiff attaches purported copies of the letters to his response. (*See id.*, Exs. A–C.) "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

Plaintiff did not attach the letters to his Complaint, incorporate the letters by reference, or even refer to the letters in his Complaint. Thus, the court declines to consider the letters. *See Erikson v. BP Expl. & Prod. Inc.*, 567 F. App'x 637, 639 (10th Cir. 2014) (concluding the trial court was correct in not considering materials attached to the plaintiff's response in opposition to the motion to dismiss); *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1136 (D. Colo. 2013).

Because Plaintiff has not alleged in his Complaint that he notified the credit reporting agencies of the disputed credit information, his § 1681s–2(b) claim should be dismissed.

## B.   *Counts II and III, FDCPA Claims*

Defendant argues Plaintiff's FDCPA claims should be dismissed because Defendant is not a debt collector under the FDCPA. (Mot. at 6–10.)

The FDCPA regulates the practices of "debt collectors." *See* 15 U.S.C. § 1692(e). If a person or entity is not a debt collector, the Act does not provide any cause of action against them. The plaintiff in an FDCPA claim bears the burden of proving the defendant's debt collector status. *See Zimmerman v. The CIT Group, Inc.*, Case No. 08–cv–00246–ZLW–KMT, 2008 WL 5786438, at *9 (D. Colo. Oct. 6, 2008) (citing *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Caroll & Bertolotti*, 374 F.3d 56, 60 (2d. Cir.2004). The Act defines a "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

> . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . **concerns a debt which was not in default at the time it was obtained by such person**;
> . . .

15 U.S.C. § 1692a(6) (emphasis added).

In his Complaint, Plaintiff states that Defendant became the servicer of his loans in January and December 2011. (Compl., ¶¶ 51, 61.) However, Plaintiff also states that the repayment of the PLUS Loans did not begin until December 1, 2013, and repayment of the Sub/Unsub Loans did not begin until January 1, 2014. (*Id.*, ¶¶ 55, 64.)

It is clear from the allegations in the Complaint that Plaintiff's loans were not in default at the time Defendant became the servicer of the loans. As such, Defendant is not a "debt collector" for purposes of the FDCPA, and Plaintiff's FDCPA claims should be dismissed.

### C. *Count IV, Breach of Contract Claim*

Plaintiff alleges that in or about May 2014, Plaintiff and Defendant revised the terms of Plaintiff's loan repayment provisions and that "Plaintiff was offered and accepted, upon the consideration of significantly increased principal, a deferment that would be back-dated to January 2014 and lasting until November 2014, thereby eliminating payments and superseding any record or suggestion of missed payments during that time." (Compl. ¶ 125.) Plaintiff alleges Defendant has continued to report false and/or misleading information to the credit reporting agencies regarding missed payments between January 1, 2014, and November 13, 2014, thereby breaching the contract. (*Id.*, ¶¶ 126–28.)

To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or

some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Defendants argue that there is no contract between Plaintiff and Defendant. (Mot. at 13–16.) In his Complaint, Plaintiff alleges that, "[p]ursuant [to] a loan agreement with the U.S. Department of Education, a third-party lender, Plaintiff is a borrower of a Federal Direct Stafford/Ford Loan and a Federal Direct PLUS Loan." (Compl., ¶ 9.) Plaintiff also states he "signed a Master Promissory Note contracting with the U.S. Department of Education for" the Sub/Unsub Loan, and he did the same for the PLUS Loan. (*Id.*, ¶¶ 19, 21.) The Master Promissory Notes ("MPNs") state, "I promise to pay to ED[2] all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN."[3] (Mot., Exs. A, B.) In his Complaint, Plaintiff recognizes that these loans are "governed by the Master Promissory Note[s]" and that he "received funds pursuant [to] the terms of the Sub/Unsub Loan and the PLUS Loan agreements." (Compl., ¶¶ 20, 22, 23.) Indeed, the MPNs do not even mention Defendant Nelnet. (Mot., Exs. A, B.) Moreover, Plaintiff asserts that the ED contracted with Nelnet to service his loans (Compl., ¶¶ 10, 39), and the MPNs make it clear that the loans "are made by the U.S. Department of Education[,]" which contracts with servicers to "answer[] questions about[] and process payments on" the loans. (Mot., Exs. A at 5;

---

[2] The MPNs define "ED" as the U.S. Department of Education. (Mot., Exs. A, B.)
[3] Plaintiff's Complaint is replete with references to the MPNs, and Plaintiff does not dispute the authenticity of these documents. As such, the court will consider the MPNs. *See GFF Corp.*, 130 F.3d at 1384–85. The court will not consider, however, Plaintiff's "Unemployment Deferment Request" attached to Defendant's motion, as the application itself is not referred to in the complaint and is not central to Plaintiff's breach of contract claim. *Id.*

B at 6.) Thus, from the allegations in the Complaint, it is clear that the ED is the lender, that the ED's MPNs set forth the loan's terms, and that Defendant is merely the loan servicer.

Plaintiff attempts to characterize his Unemployment Deferment as a contract with Defendant which he "was offered and accepted, upon the consideration of significantly increased principal . . . ." (Compl., ¶¶ 75, 76, 125.) However, both MPNs include a provision titled "Deferment and forbearance (postponing payments)." (Mot., Exs. A at 7–8, B at 9–10.) Those provisions provide that debtors may receive a deferment that allows them to temporarily stop making payments on their loans if they meet certain requirements. (*Id.*) The PLUS Loan MPN expressly contemplates the following procedure by which one may receive a deferment:

> Your servicer can provide you with a deferment request form that explains the eligibility and documentation requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from your servicer's web site.

(Ex. B at 10.) Contrary to Plaintiff's allegations, however, the deferment did not modify an existing contract or create a new contract between him and Defendant. Rather, the deferment was offered and provided pursuant to the terms of his existing MPNs with the ED.

It is clear from the allegations in the Complaint and the MPNs that Plaintiff did not enter into a contract with the defendant. Thus, his breach of contract claim should be dismissed with prejudice.

**WHEREFORE**, for the foregoing reasons, this court

**RECOMMENDS** that Defendant Nelnet, Inc.'s "Motion to Dismiss" (Doc. No. 9) be **GRANTED**.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their

right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 23rd day of February, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge